**Slip Op. 21-73**

## UNITED STATES
## COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ARP MATERIALS, INC.,<br>*Plaintiff*,<br>v.<br>UNITED STATES,<br>*Defendant*. | Court No. 20-00144 |
| THE HARRISON STEEL<br>CASTINGS CO.,<br>*Plaintiff*,<br>v.<br>UNITED STATES,<br>*Defendant*. | Court No. 20-00147 |

Before: M. Miller Baker, Judge

## OPINION

[Defendant's motion to dismiss for lack of subject-matter jurisdiction is granted.]

Dated: June 11, 2021

*Jamie L. Shookman*, Trial Attorney, Commercial Litigation Branch, *Jeffrey Bossert Clark*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *L. Misha Preheim*, Civil Division, U.S. Department of Justice of New York, NY, on the briefs for Defendant. Of counsel on the briefs were *Philip Butler*, Associate

General Counsel, Office of General Counsel, Office of the U.S. Trade Representative of Washington, DC, and *Paula Smith*, Assistant Chief Counsel, *Edward Maurer*, Deputy Assistant Chief Counsel, and *Valerie Sorensen-Clark*, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection of New York, NY.

*Christopher M. Kane*, *Daniel J. Gluck*, and *Mariana del Rio Kostenwein*, Simon Gluck & Kane LLP of New York, NY, on the brief for Plaintiffs.

*Baker*, Judge: In these cases, two importers invoke 28 U.S.C. § 1581(i)—a jurisdictional grant of last resort—seeking to compel refunds of retaliatory tariffs that the U.S. Trade Representative imposed on their goods from China and then later rescinded. The USTR's rescission of the tariffs rendered U.S. Customs and Border Protection's classification of these goods (as subject to the tariffs) erroneous.

Based on the USTR's rescission of the retaliatory tariffs, one of the importers timely protested Customs' classification decision as to certain of the goods in question. Customs duly reclassified the goods as exempt from the tariffs and the importer received a refund after this litigation began. As to those goods, the importer's refund claim is moot and the court lacks constitutional subject-matter jurisdiction.

As to the remaining goods at issue in these suits, the importers could have timely protested Customs' classification decisions. If Customs had denied such protests, the importers then could have sought relief

in this court by invoking its jurisdiction under § 1581(a). The importers, however, failed to timely protest Customs' classification decisions. Because jurisdiction would have existed under § 1581(a) had the importers timely protested, the court lacks statutory subject-matter jurisdiction under § 1581(i). The court therefore grants the government's motion to dismiss.

## Statutory and Regulatory Background

### A. The classification of imported goods

Goods imported into the United States are subject to a process known as "classification." This statutorily-mandated process requires Customs to determine where such goods fit into the Harmonized Tariff Schedule of the United States (HTSUS), 19 U.S.C. § 1202. *See* 19 U.S.C. § 1500(b) (requiring Customs to "fix the final classification and rate of duty applicable to [imported] merchandise").

The HTSUS is a systematic organizational code of headings and subheadings: "[T]he headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). In effect, the HTSUS is for imported goods what the Dewey Decimal System is for library books.

In classifying imported goods for tariff purposes, Customs assigns them to an HTSUS subheading code, which determines the applicable duty rate. *See* Alexander W. Koff, Tina Potuto Kimble, & Gus Coritsidis,

"International Trade Disputes," *in International Aspects of U.S. Litigation, A Practitioner's Deskbook* 934 (2017). Customs' determination of which HTSUS subheading to assign is critical because the applicable duty, or tariff, can vary considerably depending on which HTSUS subheading applies. *See id.* at 934 n.66. Customs assigns the HTSUS code applicable to the import on the date of entry. 19 C.F.R. § 141.69.[1]

By statute, "decisions of [Customs], including the legality of all orders and findings entering into the same," as to, *inter alia*, "the classification and rate and amount of duties chargeable," even if that decision is erroneous, "shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade" in a timely fashion. 19 U.S.C. § 1514(a)(2). A protest, including a protest challenging a classification, *see* 19 C.F.R. § 174.11 (permitting protests as to "[t]he classification and rate and amount of duties chargeable"), "shall be filed with [Customs] within 180 days after but not before—(A) date of liquidation or reliquidation." 19 U.S.C. § 1514(c)(3)(A).

---

[1] "Within 15 days of arrival in the United States, foreign merchandise is 'entered,' meaning that documentation of the importation is filed with Customs." *Thyssenkrupp Steel N. Am., Inc. v. United States*, 886 F.3d 1215, 1218 (Fed. Cir. 2018) (citing 19 U.S.C. § 1484(a); 19 C.F.R. §§ 141.0a(a), 141.4(a), 141.5, 141.11(b)).

"Liquidation" refers to the process by which an importer's liability is fixed based on duties owed upon the date of entry. Upon entry of goods, the importer must deposit estimated duties and fees with Customs. Subsequently, Customs "liquidates" the entry to make a "final computation or ascertainment of duties owed" on that entry of merchandise. 19 C.F.R. § 159.1; *see also* 19 U.S.C. § 1500.

Liquidation also necessarily includes Customs' final determination regarding classification of that entry of merchandise. *See Corporate Counsel's Guide to Importation Under the U.S. Customs Law* § 1:112 (2020); *see also Chemsol, LLC v. United States*, 755 F.3d 1345, 1350 (Fed. Cir. 2014) ("This court has confirmed that liquidation is the final challengeable event and findings related to liquidation . . . merge with the liquidation.") (cleaned up); *Volkswagen of Am., Inc. v. United States*, 532 F.3d 1365, 1370 (Fed. Cir. 2008) (characterizing circuit precedent as standing for the proposition that "all aspects of entry [are] merged in the liquidation") (citing *United States v. Utex Int'l, Inc.*, 857 F.2d 1408, 1409–10, 1412 (Fed. Cir. 1988)). Liquidation normally occurs within one year of entry, though it may occur later under certain circumstances. 19 C.F.R. § 159.12.

Following liquidation, Customs either collects any additional amounts due, with interest, if the importer's deposit was lower than the final assessment or refunds any excess deposit, with interest, if the deposit was higher than the final assessment. 19 U.S.C. § 1505(b). Thus, the protest statute requires that if an

importer believes Customs made a mistake by classi-
fying its goods under the wrong HTSUS code, the im-
porter must file a protest within 180 days after Cus-
toms liquidates the entry (thus fixing the final amount
due) or else lose the right to challenge the classifica-
tion. *See* 19 U.S.C. § 1514(a)(2).

A protest challenging classification may lead to "re-
liquidation." As the term implies, reliquidation means
Customs re-assesses the duties and fees due. If Cus-
toms grants the protest and reclassifies the entry un-
der an HTSUS code subject to a lower rate of duty,
Customs must recalculate the amount due—hence,
"reliquidation."

## B. The USTR's imposition of Section 301 duties

Section 301 of the Trade Act of 1974 authorizes the
USTR to take various actions to protect U.S. interests
when foreign trade partners violate trade agreements
or otherwise take actions adverse to U.S. trade inter-
ests. *See* 19 U.S.C. § 2411(a)(1). Pursuant to this au-
thority, in 2017 the USTR undertook a Section 301 in-
vestigation of Chinese trade practices. *Initiation of
Section 301 Investigation; Hearing; and Request for
Public Comments: China's Acts, Policies, and Practices
Related to Technology Transfer, Intellectual Property,
and Innovation*, 82 Fed. Reg. 40,213, 40,213 (USTR
Aug. 24, 2017).

After finding that China's conduct was actionable
under the statute, the USTR proposed an additional
25 percent *ad valorem* duty on various products

imported from that country. *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (USTR Apr. 6, 2018).

The USTR later imposed Section 301 tariffs on goods from China via a series of "tranches," or "lists," referred to as List 1 through List 4B. The USTR imposed the tariffs by inserting new subheadings into the HTSUS to encompass the articles on the lists. *See, e.g.*, *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,825 (USTR Aug. 16, 2018) (inserting subheading 9903.88.02 as part of the List 2 process). These cases involve Lists 2[2] and 3.[3]

The USTR's imposition of Section 301 duties was not self-executing, however. To effectuate these duties

---

[2] *See id.* at 40,823–24 (giving notice of List 2 action).

[3] *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974, 47,974 (USTR Sept. 21, 2018) (giving notice of List 3 action and imposition of 10 percent duties); *see also Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459, 20,459 (USTR May 9, 2019) (announcing that duties on List 3 articles would be increased to 25 percent beginning the following day).

as to any given entry of imports, Customs first had to classify the entries under the applicable HTSUS sub-headings. Any importer that contended Customs erroneously classified its imports under the subheadings subject to Section 301 tariffs could, after the entries liquidated, protest such classification as discussed above.

### C. The USTR's retroactive exclusions from Section 301 duties

The USTR's notices of Section 301 duties also stated that importers could request that specific products classified within an affected tariff heading be excluded (that is, exempted) from such duties. *See* 83 Fed. Reg. at 40,824 (List 2);[4] 84 Fed. Reg. at 20,460 (List 3).[5]

---

[4] For List 2, the USTR announced that any granted exclusion requests would be retroactive to August 23, 2018, the effective date of the List 2 tariffs. *Procedures to Consider Requests for Exclusion of Particular Products from the Additional Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,236, 47,236 (USTR Sept. 18, 2018).

[5] For List 3, the USTR announced that any granted exclusion requests would be retroactive to September 24, 2018, the effective date of the List 3 tariffs. *Procedures for Requests to Exclude Particular Products from the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576, 29,576 (USTR June 24, 2019).

The notices directed importers seeking exclusions to identify "the particular product in terms of the physical characteristics . . . that distinguish it from other products within the covered 8-digit subheading," and noted that the USTR would "not consider [exclusion] requests that identif[ied] the product at issue in terms of the identity of the producer, importer, ultimate consumer, actual use or chief use, or trademark or tradenames." 83 Fed. Reg. at 47,236–37.

For both the List 2 and List 3 processes, the USTR posted web pages further notifying importers that "[a]n exclusion, if granted, will apply to the particular product covered by the exclusion, and will not be tied to particular producers or exporters." List 2 FAQs at 4;[6] List 3 FAQs at 5 (same).[7]

Thus, because exclusions were "product-specific," the grant of an exclusion in response to one importer's application could apply to like products imported by other entities. The USTR implemented exclusions by inserting new subheadings into the HTSUS to encompass the articles covered by granted exclusions. *See, e.g.*, *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg.

---

[6]    https://ustr.gov/sites/default/files/enforcement/301Investigations/Additional%20%2416%20Billion%20Trade%20Action%20Exclusion%20Process%20FAQs.pdf (accessed June 9, 2021).

[7]    https://ustr.gov/sites/default/files/enforcement/301Investigations/%24200_Billion_Trade_Action_Exclusion_Process_FAQs.pdf (accessed June 9, 2021).

37,381, 37,382 (USTR July 31, 2019) (creating such a new subheading).

Just as the USTR's initial imposition of Section 301 duties was not self-executing as to any entry of goods and instead depended upon Customs' classification of the entry as subject to such duties, the USTR's retroactive exclusions were not self-executing as to the eligible goods. *See id.* at 37,381 ("[T]he exclusions *are available* for any product that meets the description in the Annex, regardless of whether the importer filed an exclusion request.") (emphasis added). The USTR stated that Customs "will issue instructions on entry guidance and implementation." *Id.*

Customs in turn issued instructions for obtaining refunds of Section 301 duties as to eligible imports:

> To request a refund of Section 301 duties paid on previous imports of duty-excluded products granted by the USTR, importers . . . may protest the liquidation.

U.S. Customs and Border Protection, Cargo Systems Messaging Service, *CSMS #39169565—GUIDANCE: Seventh Round of Products Excluded from Section 301 Duties (Tranche 2)*;[8] *see also* U.S. Customs and Border Protection, Cargo Systems Messaging Service, *CSMS #42181055—GUIDANCE: Section 301 Tranche 3— $200B Eleventh Round of Product Exclusions from*

---

[8]      https://content.govdelivery.com/bulletins/gd/USDHSCBP-255ae1d?wgt_ref=USDHSCBP_WIDGET_2 (accessed June 9, 2021).

*China* (substantively identical instructions).[9] That is, an importer wishing to seek a refund of Section 301 duties had to protest Customs' liquidation classifying the imports as subject to those duties.

Customs also stated that it would postpone ruling on any protests that included claims based on *pending* product exclusions until after the USTR ruled on the exclusion requests, at which time Customs would process the protests pursuant to the USTR's decision. "That is, [Customs] will refrain from denying or granting a party's protest before the importer receives a final determination from [the] USTR regarding its product exclusion request." U.S. Customs and Border Protection, Cargo Systems Messaging Service, *CSMS #19-000260—Section 301 Products Excluded from Duties—Liquidation Extension Request*.[10] This allowed importers confronting a looming protest deadline to file a protective protest to obtain the benefit of a pending exclusion request that the USTR might grant *after* the deadline had passed.

In short, the USTR and Customs established a system under which parties could apply for exclusions and could benefit from other parties' exclusion requests granted by the USTR. Insofar as the exclusions applied retroactively to entries for which importers had previously paid Section 301 tariffs, Customs

---

[9]     https://content.govdelivery.com/accounts/USDHSCBP/bulletins/283a1bf (accessed June 9, 2021).

[10]     https://content.govdelivery.com/accounts/USDHSCBP/bulletins/246a1d3 (accessed June 9, 2021).

would effectuate the exclusions by reclassifying imports to Section 301-duty-free HTSUS subheadings upon an importer's timely protest of the entry's original liquidation.

## Factual and Procedural Background[11]

### A. Facts relating to ARP

ARP Materials, Inc., alleges that it made five entries (importations) of merchandise under HTSUS subheading 3901.90.1000[12] that were subject to Section 301 tariffs on the dates of entry. Case 20-144, ECF 14, ¶¶ 11–13 & Exhibit. That is, Customs' classification of the merchandise under that subheading rendered the entries liable for Section 301 duties.

On July 31, 2019—after ARP's five entries at issue—the USTR granted exclusion requests submitted by other importers that covered the same category of products (as well as other products). *Notice of Product Exclusions*, 84 Fed. Reg. at 37,382. The USTR's notice created a new HTSUS tariff schedule subheading, 9903.88.12,[13] applicable to articles covered by the

---

[11] These facts are derived from the allegations of Plaintiffs' complaints and extrinsic evidence submitted by the government in form of a declaration by a Customs official. *See* Case 20-144, ECF 21-1 (Declaration of Mary Pugh) ("Pugh Decl."); Case 20-147, ECF 20-1 (same).

[12] HTSUS 3901.90.1000 refers to "[p]olymers of ethylene, in primary forms: Other: Elastomeric."

[13] Subheading 9903.88.12 refers to "[a]rticles the product of China, as provided for in U.S. note 20(o) to this subchapter,

exclusion and exempted that new heading from the Section 301 duties. 84 Fed. Reg. at 37,382. The exclusions were retroactive to August 23, 2018—prior to ARP's entries—and were to remain effective until July 31, 2020, i.e., one year after the date on which the notice of exclusions was published in the Federal Register. *Id.* at 37,381.

As noted above, the USTR's exclusions were not self-executing.[14] To take advantage of them, ARP

---

each covered by an exclusion granted by the U.S. Trade Representative." The referenced U.S. note 20(o) contains a list of specific products for which the USTR granted exclusions. Among those products is "[c]hlorinated polyethylene elastomer, in white or pale yellow powder form, containing 28 to 44 percent by weight of chlorine (described in statistical reporting number 3901.90.1000)." HTSUS Chapter 99, Subchapter III, U.S. note 20(o)(1). This description is the same one cited in ARP's complaint. *See* Case 20-144, ECF 14, ¶¶ 9, 11. In short, the products covered by subheading 9903.88.12 (subject to an exclusion) were a narrow carve-out from the broader category of products subject to Section 301 duties under subheading 3901.90.1000.

[14] The exclusions were limited exclusions—Section 301 tariffs still applied generally, meaning that ARP needed to demonstrate to Customs that its entries fell under the applicable HTSUS subheading carved out as exempt from Section 301 duties. *See, e.g.*, 83 Fed. Reg. at 47,236–37 (requiring importers seeking exclusions to identify their product in terms of particular characteristics distinguishing it from other products within the same 8-digit HTSUS subheading); 84 Fed. Reg. at 37,381 (stating that "exclusions [were] available for any product that meets the description in the Annex"); *compare also above* note 12 (citing broad HTSUS subheading subject to Section 301 tariffs that

needed to file protests within 180 days of the various liquidation dates of these five entries.[15] ARP did exactly that as to entry '7552-2, as it filed a protest less than 180 days after that entry's liquidation. Customs granted the protest, reclassified the entry, and ARP received a refund of Section 301 duties for that entry. Case 20-144, ECF 21-1, Pugh Decl. ¶ 12; Case 20-144, ECF 23, at 18 (Plaintiffs conceding the government's factual chronology).

As to its four remaining entries, ARP took untimely action or no action. ARP protested Customs' assessment of Section 301 duties on entries '4968-3 and '5369-3, but it did so more than 180 days after those entries' liquidation. Customs denied the protest as untimely. Case 20-144, ECF 21-1, Pugh Decl. ¶ 9;[16] Case

---

ARP's entries were classified under) *with above* note 13 (citing narrower exclusion with HTSUS subheading applicable to specific products, including ARP's entries).

[15] The USTR published its exclusion notice only five days after the liquidation of one of ARP's entries (leaving ARP 175 days to protest as to that entry) and before liquidation of ARP's four remaining entries (leaving ARP a full 180 days to protest as to those entries).

[16] Plaintiffs' amended complaints list only the entry numbers and the entry dates. They do not refer to the liquidation dates, the dates on which Plaintiffs filed protests, or the dates on which Customs decided the protests. For that matter, the amended complaints do not even mention the protests—nowhere do they say anything whatsoever about Plaintiffs having filed protests, much less Customs' rulings on those protests. This information was placed in the record by the government through the Pugh declaration. *See* Case 20-144, ECF 21-1.

20-144, ECF 23, at 18 (Plaintiffs conceding the government's factual chronology). ARP did not file protests for entries '5259-6 and '5611-8. *See* Case 20-144, ECF 21-1, Pugh Decl. ¶¶ 10–11 (citing these entries and not discussing any protests, unlike the other entries for which the declaration cites protest dates and outcomes); Case 20-144, ECF 23, at 18 (Plaintiffs conceding that ARP did not file protests for these two entries).

The following chart[17] summarizes ARP's entries at issue here that were eligible for reclassification based on the USTR's July 31, 2019, exclusion notice:

---

[17] Case 20-144, ECF 21-1, Pugh Decl. ¶¶ 7–12; Case 20-144, ECF 21, at 12 (government motion summarizing Pugh declaration); Case 20-144, ECF 23, at 16, 18 (ARP response summarizing same dates). There was a discrepancy between the entry dates found in the exhibit to ARP's amended complaint and the dates found in the government's motion and attached Pugh declaration. *See* Case 20-144, ECF 14, Exhibit; Case 20-144, ECF 21, at 12; *see generally* Case 20-144, ECF 21-1 (Pugh declaration setting forth entry, liquidation, and protest dates, as well as protest outcomes). The dates in Plaintiffs' response to the government's motion match the dates the government supplied. *See* Case 20-144, ECF 23, at 16. The court, therefore, presumes that ARP concedes the accuracy of the chronology described in the Pugh declaration submitted by the government.

| Entry # | Entry date | Liquidation date | Protest status |
|---------|-----------|------------------|----------------|
| F57-4005259-6 | Aug. 30, 2018 | July 26, 2019 | None filed |
| F57-4004968-3 | Sept. 21, 2018 | Aug. 16, 2019 | Filed March 2, 2020; denied as untimely |
| F57-4005369-3 | Sept. 24, 2018 | Aug. 16, 2019 | Filed March 2, 2020; denied as untimely |
| F57-4005611-8 | Sept. 27, 2018 | Aug. 23, 2019 | None filed |
| F57-4007552-2 | July 17, 2019 | June 12, 2020 | Filed June 27, 2020; granted |

## B. Facts relating to Harrison

Harrison Steel Castings Co. alleges that it made two entries of merchandise under HTSUS subheading 8302.30.3060[18] that were subject to Section 301 tariffs. Case 20-147, ECF 14, ¶¶ 11–13 & Exhibit. That is, Customs' classification of the merchandise under that subheading rendered the entries liable for Section 301 duties.

_____

[18] HTSUS 8302.30.3060 refers to "[b]ase metal mountings, fittings and similar articles suitable for furniture, doors, staircases, windows, blinds, coachwork, saddlery, trunks, chests, caskets or the like; base metal hat racks, hat-pegs, brackets and similar fixtures; castors with mountings of base metal; automatic door closers of base metal; and base metal parts thereof: Other mountings, fittings and similar articles suitable for motor vehicles, and parts thereof: Other."

After the two entries in question, Customs granted exclusion requests submitted by other importers that covered the same category of products as Harrison's (as well as other products). *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 17,158 (USTR Mar. 26, 2020). The notice created a new HTSUS tariff schedule subheading, 9903.88.43,[19] applicable to articles covered by the exclusions and exempted that new heading from the Section 301 duties. 85 Fed. Reg. at 17,160. The exclusions were retroactive to September 24, 2018—prior to Harrison's entries—and were to remain effective until August 7, 2020. *Id.* at 17,158.

The USTR published its exclusion notice on March 26, 2020, more than 180 days after the liquidation of Harrison's entries. To protect its right to take

---

[19] HTSUS 9903.88.43 applies to "[a]rticles the product of China, as provided for in U.S. note 20(vv) to this subchapter, each covered by an exclusion granted by the U.S. Trade Representative." The referenced U.S. note 20(vv) contains a list of specific products for which the USTR granted exclusions. Among those products are "[m]ountings and fittings suitable for motor vehicles of iron or steel, of aluminum or of zinc, other than pneumatic cylinders (described in statistical reporting number 8302.30.3060)." HTSUS Chapter 99, Subchapter III, U.S. note 20(vv)(96). This description is the same one cited in Harrison's complaint. *See* Case 20-147, ECF 14, ¶ 9. In short, the products covered by subheading 9903.88.43 (subject to an exclusion) were a narrow carve-out from the broader category of products subject to Section 301 duties under subheading 8302.30.3060.

advantage of these exclusions, which as noted above were not self-executing,[20] Harrison needed to file protective protests based on the then-pending exclusion requests prior to the 180-day protest deadline. As such exclusion requests were filed and pending prior to liquidation of Harrison's entries, Harrison had the full 180 days to file protective protests as to the classification of both of its entries.[21]

On March 31, 2020—five days after Customs published notice of the relevant exclusion but more than 180 days after the liquidation dates of the two entries at issue—Harrison filed a protest challenging Customs' assessment of Section 301 duties on these entries *and* two other entries not included in Harrison's

---

[20] *See above* note 14; *compare also above* note 18 (citing broad HTSUS subheading subject to Section 301 tariffs that Harrison's entries were classified under) *with above* note 19 (citing narrower exclusion with HTSUS subheading applicable to specific products, including Harrison's entries).

[21] Both the government and Plaintiffs agree that another importer filed the relevant exclusion requests on August 12, 2019, that the USTR granted them on March 21, 2020, and that they were published in the Federal Register on March 26, 2020. Case 20-147, ECF 20, at 16–17; Case 20-147, ECF 22, at 22. The government also notes that these exclusion requests were publicly available via the USTR's website, which would have allowed Harrison to learn of the requests. Case 20-147, ECF 20, at 16. The exclusion requests were filed *prior to* the liquidation date for either of Harrison's entries, meaning Harrison had the full 180 days available to file protective protests as to both entries.

complaint. Case 20-147, ECF 20-1, Pugh Decl. ¶¶ 4–6; Case 20-147, ECF 22, at 25 (Harrison conceding accuracy of dates stated in Pugh declaration). Customs denied the protest as untimely as to the two entries at issue but granted the protest as to the other two entries.[22] Case 20-147, ECF 20-1, Pugh Decl. ¶ 6; Case 20-147, ECF 22, at 26.

The following chart[23] summarizes Harrison's entries at issue here that would have been eligible for re-classification based on the USTR's March 26, 2020, exclusion notice had Harrison filed protective protests to preserve its rights pending the USTR's consideration of the relevant exclusion requests:

---

[22] Harrison's protest as to the two entries not at issue here was successful because it was timely. Case 20-147, ECF 20-1, Pugh Decl. ¶ 6 ("[Customs] accepted Protest No. 3901-20-109473 as timely with respect to the two other entries, which are not at issue here, and for which Harrison Steel received a refund."); Case 20-147, ECF 22, at 26 (Harrison conceding that Customs "granted the protest with respect to the other two entries that are not at issue").

[23] Harrison's amended complaint alleges an entry date of October 15, 2020, for entry '6818-9, Case 20-147, ECF 14, Exhibit, but its opposition to the government's motion states—consistent with the Pugh declaration—that October 12 was the entry date. Case 20-147, ECF 22, at 25.

| Entry # | Entry date | Liquidation date | Protest status |
|---------|-----------|------------------|----------------|
| 555-0666283-6 | Sept. 27, 2018 | Aug. 23, 2019 | Filed March 31, 2020; denied as untimely |
| 555-0666818-9 | Oct. 12, 2018 | Sept. 6, 2019 | Filed March 31, 2020; denied as untimely |

## C. These suits

After Customs denied their protests, ARP and Harrison brought these suits. As amended, their substantially identical complaints allege that they were the importers of record for the merchandise identified in the charts above and that they paid Section 301 duties on such merchandise. ECF 14, ¶¶ 4, 8, 11, 12.[24] Without articulating any legal theory or cause of action, they assert in their cryptic complaints that the U.S. government is "in wrongful possession of the [S]ection 301 duties on [the relevant] merchandise as the USTR has determined that no such duties apply *ab initio* to the date of implementation of 301 duties on [Lists 2 and 3] of the affected items previously announced by the USTR." *Id.* ¶ 13. Plaintiffs seek a refund of "monies

---

[24] Because the two amended complaints are substantively identical aside from references to the plaintiffs' names and a few minor wording differences, the paragraph numbering is the same in both amended complaints, and both appear at CM/ECF docket entry 14 in their respective cases, citations herein to the amended complaints refer simply to ECF 14.

originally collected beginning on August 23, 2018 pursuant to the authority of [Section 301]." *Id.* ¶ 5.[25]

The government moves to dismiss both cases under Rule 12(b)(1) for lack of subject-matter jurisdiction and, alternatively, under Rule 12(b)(6) for failure to state a claim. Case 20-144, ECF 21, at 4 (citing USCIT R. 12(b)(1) and 12(b)(6)); Case 20-147, ECF 20 (same). Plaintiffs oppose. Case 20-144, ECF 23; Case 20-147, ECF 22.[26] As no party has requested oral argument, the court decides the motion on the papers.

## Standard of Review

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may take either of two general forms—it may present a "facial" attack on the pleading

---

[25] ARP's amended complaint includes entry '7552-2 as among those entries for which it is entitled to a refund. After ARP filed its amended complaint, as discussed above Customs granted ARP's protest and refunded Section 301 duties for that entry. ARP acknowledges this fact. *See* ECF 23, at 18. Therefore, as to that entry, ARP's suit is moot, and the court lacks constitutional subject-matter jurisdiction. *Cf. Umanzor v. Lambert*, 782 F.2d 1299, 1301 n.2 (5th Cir. 1986) (Gee, J.) ("Whether there exists an Article III case or controversy, and thus Constitutional subject-matter jurisdiction, is analytically distinct from whether the pertinent . . . statutes confer statutory subject-matter jurisdiction.").

[26] The government's motion and the plaintiffs' response thereto are identical in both cases. Accordingly, citations to the parties' briefing from this point forward in this opinion are to the filings in Case 20-144, ECF 21 (government's motion) and ECF 23 (plaintiffs' response).

or a challenge to the "factual" basis for the court's jurisdiction. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). In either situation, the plaintiff has the burden of establishing jurisdiction. *Id.*

A "facial" challenge is one in which the movant "simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations," in which case the allegations are accepted as true and construed in a light most favorable to the complainant. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The same standard governs a Rule 12(b)(6) motion to dismiss for failure to state a claim. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (describing Rule 12(b)(6) standard as requiring the court to accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff, who must plead sufficient facts to state a claim to relief that is plausible on its face).

A "factual" challenge, in contrast, is one in which the movant "denies or controverts the pleader's allegations of jurisdiction," and in those cases "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Id.* In cases involving "factual" challenges, "the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion." *Id.* (cleaned up) (citing, *inter alia*, *Gibbs v. Buck*, 307 U.S. 66, 72 (1939)); *see also Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996) ("A party may challenge the court's

jurisdictional authority by denying or controverting necessary jurisdictional allegations. When such challenge is made the court may consider evidence outside the pleadings to resolve the issue." (cleaned up and citing, *inter alia*, *KVOS, Inc. v. Associated Press*, 299 U.S 269, 278 (1936))).

## Discussion

Plaintiffs' amended complaints invoke 28 U.S.C. § 1581(i)[27] as the basis for subject-matter jurisdiction. ECF 14, ¶ 2. This provision facially confers jurisdiction, as both complaints assert claims that arise from Section 301 duties that the USTR imposed "on the

---

[27] Section 1581(i) provides in relevant part:

(1) In addition to the jurisdiction conferred upon the [CIT] by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the [CIT] shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(A) revenue from imports or tonnage;

(B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section.

importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

In its motion to dismiss for lack of subject-matter jurisdiction, the government argues that Plaintiffs challenge "the tariff classification and applicable duty rate that [Customs] applied to these entries at liquidation." ECF 21, at 28. The government further argues that Customs' classification of these entries was a protestable decision by Customs, meaning that Plaintiffs could have protested Customs' classification decisions and then brought this suit under jurisdiction conferred by § 1581(a). *Id.* Therefore, according to the government, because jurisdiction would have existed under § 1581(a) had Plaintiffs timely protested,[28] jurisdiction is absent under § 1581(i). ECF 21, at 22–23.[29]

As a preliminary matter, Plaintiffs acknowledge that § 1581(i) is a jurisdictional grant of last resort. *See* ECF 23, at 2 ("The Federal Circuit's 'unambiguous precedents . . . make clear that [§ 1581(i)'s] scope is strictly limited,' and that statutory procedures 'cannot be easily circumvented.' " (alterations Plaintiffs') (quoting *Int'l Custom Prods., Inc. v. United States*, 467

---

[28] "Section 1515 requires an aggrieved party to file a protest under section 1514, which Customs must either grant or deny, before the party may sue under section 1581(a)." *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed. Cir. 1994).

[29] As the government's motion relies on extrinsic evidence, it constitutes a factual challenge to subject-matter jurisdiction.

F.3d 1324, 1327 (Fed. Cir. 2006))). It is well estab-
lished that "[w]hen relief is prospectively and realisti-
cally available under another subsection of 1581, invo-
cation of subsection (i) is incorrect. Where another
remedy is or could have been available, the party as-
serting § 1581(i) jurisdiction has the burden to show
that the remedy would be manifestly inadequate."
*Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191
(Fed. Cir. 2018) (cleaned up).

Without this limiting interpretation, the court's re-
sidual jurisdiction under § 1581(i) " 'would threaten to
swallow the specific grants of jurisdiction contained
within the other subsections and their corresponding
requirements.' " *Chemsol, LLC v. United States*, 755
F.3d 1345, 1349 (Fed. Cir. 2014) (quoting *Norman G.
Jensen, Inc. v. United States*, 687 F.3d 1325, 1329
(Fed. Cir. 2012)).

Thus, determining whether jurisdiction exists un-
der § 1581(i) involves two questions. First, the court
must "consider whether jurisdiction under a subsec-
tion other than § 1581(i) was available." *Erwin Hymer
Group N. Am., Inc. v. United States*, 930 F.3d 1370,
1375 (Fed. Cir. 2019) (cleaned up). "Second, if jurisdic-
tion was available under a different subsection of
§ 1581, [the court must] examine whether the remedy
provided under that subsection is 'manifestly inade-
quate.' If the remedy is not manifestly inadequate,
then jurisdiction under § 1581(i) is not proper." *Id.*
(cleaned up).

The court therefore considers whether § 1581(a) conferred jurisdiction over Plaintiffs' claims as the government contends, and if so whether it provided an adequate remedy.

## I.

Section 1581(a) provides that the CIT shall have "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a). Section 515 of the Tariff Act in turn establishes procedures for Customs to allow or deny a protest filed in accordance with 19 U.S.C. § 1514 and authorizes suing in the CIT to challenge a denial of any such protest. *See* 19 U.S.C. § 1515; *see also* 28 U.S.C. § 2631(a) (authorizing suit in the CIT to contest Customs' denial of a protest filed under 19 U.S.C. § 1514).

The government argues that Plaintiffs' challenge is to Customs' "liquidation of their entries in a manner that did not account for the product exclusions granted by the USTR." ECF 21, at 25. Specifically, the government contends that Plaintiffs' challenge is to Customs' liquidation of their entries based on the wrong HTSUS tariff classification. *Id*. at 28. Thus, according to the government, "this process involved a protestable decision by [Customs]," *id*. at 25, meaning that § 1581(a) provides the applicable jurisdictional grant. In support of this argument, the government cites authority for the proposition that Customs "may make protestable decisions in the process of implementing another agency's instructions or orders." *See* ECF 21, at 26–27 (citing *Xerox Corp. v. United States*, 289 F.3d 792, 795

(Fed. Cir. 2002), *overruled on other grounds by Sun-preme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020); *Belgium v. United States*, 551 F.3d 1339, 1347 (Fed. Cir. 2009)).

Plaintiffs do not dispute the principle that Customs can make protestable decisions while implementing another agency's instructions. Instead, they retort that their mere filing—and Customs' entertaining—of protests as to some of the entries at issue in this suit (and others) does not foreclose jurisdiction under § 1581(i) if Customs' role in implementing Section 301 tariffs and exclusions was ministerial rather than substantive for § 1581(a) purposes. ECF 23, at 41–46. They characterize Customs' role as ministerial because the USTR first imposed and then later rescinded the Section 301 tariffs, and "there is no reason to require exhaustion of [Customs'] administrative procedures when a party challenges a decision in which [Customs] played no part and over which [Customs] ha[d] no control." *Id.* at 45. In support of these arguments, Plaintiffs cite *United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998); *Gilda Industries, Inc. v. United States*, 446 F.3d 1271 (Fed. Cir. 2006); *Industrial Chemicals, Inc. v. United States*, 941 F.3d 1368 (Fed. Cir. 2019); and *Mitsubishi Electronics America, Inc. v. United States*, 44 F.3d 973 (Fed. Cir. 1994).

In *U.S. Shoe*, an exporter brought an action in the CIT under § 1581(i) challenging the constitutionality of a harbor maintenance tax after Customs denied its protest. The Supreme Court held that § 1581(i), rather than § 1581(a), conferred jurisdiction, reasoning that

while "[a] protest [under § 1514] is an essential pre-
requisite when one challenges an *actual* Customs de-
cision," the exporter challenged no such decision.
523 U.S. at 365 (emphasis added). In collecting the
harbor maintenance tax, Customs "perform[ed] no ac-
tive role, . . . undert[ook] no analysis or adjudication,
issue[d] no directives," and "impose[d] no liabilities."
*Id*. (cleaned up). "[I]nstead, Customs merely passively
collect[ed]" the tax payments. *Id*. Thus, Customs' es-
sentially ministerial function in collecting tax pay-
ments was not an "actual" Customs decision for § 1514
purposes.

In *Gilda*, an importer brought an action in the CIT
under § 1581(i) after Customs denied its protest of Sec-
tion 301 retaliatory duties imposed at the direction of
the USTR. The importer's suit challenged the USTR's
authority to impose the duties and sought refunds as
to the protested entries as well as prospective relief as
to future entries (by removal of its products from the
USTR's retaliatory list).

On appeal, the Federal Circuit held that § 1581(i)
rather than § 1581(a) conferred jurisdiction. The court
reasoned that because Customs played no role in the
USTR's issuance of the retaliatory list, there was no
reason "to require exhaustion of Customs' administra-
tive procedures" as Customs had no authority to over-
turn the USTR's decision and to "grant [retrospective]
relief in a protest action challenging imposition of the
duty." 446 F.3d at 1276. Put another way, the im-
porter's protest did not challenge Customs' classifica-
tion of its entries per se or any other decision within

Case 1:20-cv-00144-MMB   Document 25   Filed 06/11/21   Page 29 of 38

Ct. Nos. 20-00144, 20-00147                                    Page 29

Customs' purview, but rather the USTR's authority to impose the Section 301 duties in the first instance, which Customs had no authority to overturn. Moreover, insofar as the importer sought prospective relief in the form of termination of the USTR's retaliatory list or removal of its goods from that list, such relief was "beyond the scope of issues that could be protested under 19 U.S.C. § 1514(a)." *Id.* at 1277.

In *Industrial Chemicals,* retroactive legislation exempted an importer's entries from duties but imposed a deadline to request a refund. The importer unsuccessfully requested refunds from Customs after the statutory deadline, and thereafter protested. After Customs denied the protest, the importer brought an action under § 1581(a) in the CIT, which dismissed the case for lack of jurisdiction. The Federal Circuit affirmed, holding that § 1581(a) did not supply jurisdiction because Customs' denial of the protests was a ministerial decision mandated by statute—Customs lacked authority to extend the deadline to seek a refund. *See* 941 F.3d at 1372.[30]

In *Mitsubishi*, an importer brought an action in the CIT challenging Customs' denial of its protest of its

---

[30] The importer did not invoke § 1581(i) as an alternative basis for subject-matter jurisdiction in the CIT and unsuccessfully attempted to do so on appeal. *See* 941 F.3d at 1373 n.3. *But cf.* 28 U.S.C. § 1631 (providing that when a federal court lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed").

antidumping duty rate and invoked § 1581(a) jurisdiction. The Federal Circuit held that because the Commerce Department determined antidumping duty rates, Customs' role in collecting those duties was "ministerial" rather than "a decision under section 1514(a)," and § 1581(a) did not confer jurisdiction. 44 F.3d at 977.

Given the teaching of *U.S. Shoe*, *Gilda*, *Industrial Chemicals*, and *Mitsubishi*, jurisdiction under § 1581(a) turns on whether Plaintiffs challenge an "actual Customs decision" for purposes of 19 U.S.C. § 1514(a)(2), *U.S. Shoe*, 523 U.S. at 365, or instead challenge a decision of the USTR (or something else). To answer that, the court must determine the "true nature of the action," *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1360 (Fed. Cir. 2016), "to discern *the particular agency action* that is the source of the alleged harm so that [a court] may identify which subsection of § 1581 provides the appropriate vehicle for judicial review." *Id*. (emphasis added). This determination "depend[s] upon the attendant facts asserted in the pleadings." *Id*.

ARP's complaint[31] alleges in relevant part:

4. Plaintiff, ARP, is the importer of record of the merchandise upon which the retaliatory duties

---

[31] Harrison's complaint is identical in all material respects except as to the applicable merchandise, HTSUS subheading (8302.30.3060), USTR list, and dates. *See* Case 20-147, ECF 14, ¶¶ 4–6, 11–13.

that are the subject of this action were assessed and paid.

5. This case is brought to compel the Defendant United States to refund monies originally collected beginning on August 23, 2018 pursuant to the authority of 19 U.S.C. § 2411.

6. Subsequently on July 31, 2019 (84 Fed. Reg. 37381 et seq.) the USTR announced certain retroactive exclusions from the effects of retaliatory duties under USTR Docket 2018-0018, including *products imported under subheading 3901.90.1000, Harmonized Tariff of the United States* [sic] *("HTSUS").*

\* \* \*

11. The imported merchandise involved in this claim consists of the items entered through the Ports of the United States on or after August 23, 2018 *under subheading 3901.90.1000, HTSUS. See* Exhibit.

12. The regular duties, taxes and fees plus USTR applied duties under section 301 of the Trade Act of 1974 have been paid.

13. The United States remains in wrongful possession of the section 301 duties on ARP's entries of *3901.90.1000, HTSUS, merchandise* as the USTR has determined that no such duties apply *ab initio* to the date of implementation of

301 duties on "List 2" of the affected items pre-
viously announced by the USTR.

Case 20-144, ECF 14, ¶¶ 4–6, 11–13 (emphasis added).

On the face of Plaintiffs' complaints, "the particular
agency action that is the source of the alleged harm" is
the entry of the merchandise under the HTSUS sub-
headings subject to Section 301 duties. That is, Plain-
tiffs challenge Customs' classification of the merchan-
dise under HTSUS subheadings 3901.90.1000 (in the
case of ARP) and 8302.30.3060 (as to Harrison). Ac-
cording to Plaintiffs, the USTR's retroactive exclusions
rendered Customs' classification of their merchandise
under those subheadings "wrongful."

Plaintiffs' response to the government's motion con-
firms this reading of their complaints. They repeatedly
emphasize that they seek to "enforce" the USTR's Sec-
tion 301 exclusions. *See* ECF 23, at 18 (stating that in
filing its protests, "ARP was seeking to enforce the
USTR's retroactive exclusion decision"); at 42 ("Plain-
tiffs here seek enforcement of the USTR's decisions to
retroactively rescind 301 duties that the USTR deter-
mined never should have been assessed and collected
in the first instance"); at 44 ("[I]t is the USTR's deci-
sions that Plaintiffs seek to enforce in their cases");
at 46 ("Defendant's motion, if granted, would deny
Plaintiffs access to the Court to *enforce the USTR's de-
cisions* relative to their imports of goods retroactively
excluded from . . . 301 duties, and make the decisions
of the USTR *subject to an absurd interpretation by
[Customs]*." (emphasis added)).

Unlike the importer in *Gilda*, Plaintiffs do not challenge the USTR's authority to impose retaliatory tariffs; instead, they seek to enforce the USTR's exclusion decisions. Their quarrel is with what they characterize as Customs' "absurd interpretation" of the USTR's retaliatory list, i.e., classification of their entries, given the exclusions. Thus, unlike *Gilda* where the challenged source of the harm to the importer was the USTR's retaliatory list, "the particular agency action that is the source of" Plaintiffs' harm here is Customs' classifications of their entries under HTSUS subheadings tagged with Section 301 duties—classifications that the USTR's retroactive exclusions rendered erroneous. In "seeking to enforce" the USTR's retroactive exclusions, Plaintiffs challenge Customs' classification decisions.

But Customs' classifications of Plaintiffs' entries were protestable "decisions" of that agency by statutory definition. *See* 19 U.S.C. § 1514(a)(2) (Customs' "decisions" as to "classification . . . shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section"); *see also Xerox Corp. v. United States*, 289 F.3d 792, 794 (Fed. Cir. 2002) ("[F]indings of Customs as to 'the classification and rate and amount of duties chargeable' are protestable to Customs under 19 U.S.C. § 1514(a)(2)."), *overruled on other grounds by Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020).

Customs' classification determinations as to Plaintiffs' entries were necessarily protestable "decisions" because the agency had to "[f]irst, ascertain[] the

meaning of specific terms in the [HTSUS] provision[,] and second, determin[e] whether the goods come within the description of those terms." *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1361–62 (Fed. Cir. 2011) (noting that "[p]roper classification of goods under the HTSUS entails a two step process"). The former determination was a question of law, *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999), while the latter was a question of fact, *see id.* ("Determining whether a particular imported item falls within the scope of the various classifications as properly construed is a question of fact." (quoting *Bauerhin Techs. Ltd. P'ship v. United States*, 110 F.3d 774, 776 (Fed. Cir. 1997))).

Unlike in *U.S. Shoe* or *Mitsubishi*, Customs here performed more than a passive or ministerial function; in classifying Plaintiffs' entries under HTSUS subheadings subject to Section 301 duties, it made substantive legal (interpreting the HTSUS subheadings) and factual (determining whether the entries fell within those subheadings) determinations that it had the authority to make. These determinations required Customs to exercise "genuine interpretive or comparable judgments." *Thyssenkrupp*, 886 F.3d at 1225.

Accordingly, this case "presents exactly the scenario in which § 1514's protest provisions can be invoked because Customs engaged in some sort of decision-making process." *Chemsol, LLC v. United States*, 755 F.3d 1345, 1351 (Fed. Cir. 2014) (cleaned up).

And unlike in *Gilda* and *Industrial Chemicals*, Customs indisputably had the authority to grant Plaintiffs their requested relief in these protest actions—reclassification of their entries under different subheadings that were not subject to the retaliatory duties, resulting in the refund of the previously paid duties. Indeed, precisely because Customs had *and* exercised such authority after ARP timely protested as to one entry, *see above* note 25, this suit is partially moot.

Because Plaintiffs contend that the USTR's exclusions rendered Customs' classification of their entries erroneous, they were statutorily obligated to timely protest under 19 U.S.C. § 1514(a)(2). That Customs' classification decisions became retroactively erroneous due to the USTR's exclusions rather than some other reason is immaterial; the obligation to protest a Customs classification error does not turn on whether it was erroneous *ab initio* or later became erroneous due to retroactive legislation or (as here) administrative action. Therefore, as to Plaintiffs' claims for refunds of Section 301 duties that are not moot, jurisdiction would have existed here under § 1581(a) had Plaintiffs timely protested Customs' classification decisions that resulted in their erroneous liability for Section 301 duties.

## II.

Even if jurisdiction otherwise exists under another subsection of § 1581, subject-matter jurisdiction will nevertheless attach under subsection (i) *if* "the remedy provided under that other subsection would be manifestly inadequate." *Int'l Custom Prods., Inc. v. United*

*States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)).

"[T]o be manifestly inadequate, the protest must be an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193–94 (Fed. Cir. 2018) (cleaned up and quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008)). It is axiomatic that a party's failure to timely invoke a remedy does not make it inadequate. *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1346 (Fed. Cir. 1995) (citing *Omni U.S.A., Inc. v. United States*, 840 F.2d 912, 915 (Fed. Cir. 1988)).

ARP's moot claim (due to its successful protest) as to entry '7552-2 and Harrison's successful protests as to two entries not included in its complaint amply demonstrate that far from being exercises in futility, timely protests on their part as to the remaining entries at issue in these suits were opportunities for picking low-hanging fruit. *Cf. Carbon Activated Corp. v. United States*, 6 F. Supp. 3d 1378, 1380 (CIT 2014) (finding the remedy adequate where §1581(a) "would have been available to Plaintiff" if it had filed a protest within 180 days of liquidation, but Plaintiff filed a protest "three years after the alleged erroneous liquidation"), *aff'd*, 791 F.3d 1312 (Fed. Cir. 2015). Here, as in *Carbon Activated*, "Plaintiff[s] had an adequate remedy for [their] alleged erroneous liquidation[s], but [they] lost that remedy because [their] protest[s]

w[ere] untimely" or not made at all, "not because the remedy was inadequate." *Id.*

*Juice Farms* is also instructive. In that case, Commerce suspended liquidation of an importer's entries pending completion of an antidumping investigation, but Customs mistakenly liquidated 20 entries while the suspension orders remained in effect and issued "bulletin notices" advising of the liquidations. The importer, however, did not diligently check for bulletin notices and learned of the liquidations only after the protest period had expired. 68 F.3d at 1345.

The Federal Circuit observed that by statute, "all liquidations, whether legal or not, are subject to the timely protest requirement" and found that the bulletin notices constituted adequate notice to the importer to trigger the protest period. *Id.* at 1346. Notably, the court also explained that "the importer[ ] bears the burden to check for posted notices of liquidation and to protest timely. Juice Farms cannot circumvent the timely protest requirement by claiming that its own lack of diligence requires equitable relief under 28 U.S.C. § 1581(i)." *Id.* (cleaned up).

The same is true here—Plaintiffs had adequate notice of the procedures they were to follow to correct Customs' erroneous classification decisions, and the record shows that they did follow those procedures to receive refunds as to certain entries, thus partially mooting this litigation. As to the entries remaining at issue here, however, Plaintiffs regrettably dropped the ball. *Cf. Degussa Canada Ltd. v. U.S.*, 87 F.3d 1301,

1304 (Fed. Cir. 1996) ("Degussa's unfortunate situation of having paid a duty that, it subsequently turned out, it should not have paid, is of its own making. Degussa could have avoided the problem if it had filed a timely protest to the . . . classification [of its entry].").

## Conclusion

For the reasons explained above, the court lacks constitutional subject-matter jurisdiction as to one of ARP's entries and statutory subject-matter jurisdiction as to the remainder of its and Harrison's entries.[32] The court therefore grants the government's Rule 12(b)(1) motions to dismiss and will enter judgment dismissing these cases. *See* USCIT R. 58(a).

Dated:  June 11, 2021             *M. Miller Baker*
        New York, NY              M. Miller Baker, Judge

---

[32] Because subject-matter jurisdiction is absent here, the court lacks authority to address the government's alternative Rule 12(b)(6) grounds for dismissal on the merits. *See Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1288 (11th Cir. 2012) (Pryor, J.) ("[A]n inferior court must have both statutory and constitutional jurisdiction before it may decide a case on the merits . . . .") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)).